UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ADA SOTO,
Plaintiff,

-against-

219 DOMINICAN VALLE CORP., et. al.,

Defendants.

25-CV-1596 (JGK) (RFT)

**REPORT AND RECOMMENDATION**

**TO THE HONORABLE JOHN G. KOELTL, UNITED STATES DISTRICT JUDGE:**

Plaintiff Ada Soto brought this action against 219 Dominican Valle Corp. (d/b/a/ Meson Restaurant) (the "Corporate Defendant"), Mafarda Gonzalez, and Orlando Vazquez (collectively, the "Defendants"), under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and the New York Labor Law ("NYLL"). Plaintiff alleged that during her employment, Defendants failed, among other things, to: (1) pay her minimum wages and overtime wages, in violation of the FLSA and NYLL; (2) pay her "spread of hours" premiums, in violation of the New York Codes, Rules, and Regulations ("NYCRR"); and (3) provide wage notice, wage statements, and timely payment, in violation of the NYLL. (*See* ECF 1, Compl.) Plaintiff seeks unpaid minimum wages, overtime wages, spread of hours wages, damages for statutory violations of New York law, liquidated damages, prejudgment interest, and attorney's fees and costs. (*See id.* ¶ 16.)

Defendants were served on April 5, 2025. (*See* ECF 9, 10, 11, Affs. of Service.) After they failed to respond, Your Honor issued an order stating that Plaintiff was entitled to a default judgment. (*See* ECF 36, Order.) The matter was referred to me for an inquest on damages. (*See id.*)

For the reasons set forth below, I respectfully recommend that the motion for a default judgment should be GRANTED and that judgment should be entered against Defendants in favor of Plaintiff, with Plaintiff to be awarded:

1. Damages in the amount of $113,281.61, consisting of: (a) $3,790.00 in total unpaid minimum wages; (b) $43,473.00 in total unpaid overtime wages; (c) $4,116.00 in total unpaid spread of hours wages; (d) $51,379.00 in liquidated damages (a+b+c); and (e) $10,523.61 in prejudgment interest, plus $12.67 per day for every day after August 24, 2026 until the Clerk of Court enters a final judgment;
2. Reasonable attorney's fees and costs in the amount of $5,255.00; and
3. Post-judgment interest pursuant to 28 U.S.C. § 1961.

## BACKGROUND

### I. Factual Background

Unless otherwise indicated, I draw from the facts of the Complaint (ECF 1) and the Declaration of Ada Soto (ECF 32-4 ("Soto Decl.")). Given Defendants' default, I accept as true all well-pleaded factual allegations in the Complaint, except as to damages. *See City of New York v. Mickalis Pawn Shop*, *L.L.C.*, 645 F. 3d 114, 137 (2d Cir. 2011) ("It is an ancient common law axiom that a defendant who defaults thereby admits all well-pleaded factual allegations contained in the complaint.").[1] As to damages, I rely on Plaintiff's declaration. *See Lopez v. Emerald Staffing*, No. 18-CV-2788 (SLC), 2020 WL 915821 at *1 n.1 (S.D.N.Y. Feb. 26, 2020)

[1] Unless indicated otherwise, this report and recommendation omits internal quotation marks, alterations, and citations from quoted text.

(citing *Finkel v. Romanowicz*, 577 F. 3d 79, 84 (2d Cir. 2009)) (relying on and accepting as true facts from, among other sources, the plaintiffs' declarations).

Plaintiff is a former employee of Meson Restaurant, a Caribbean restaurant located at 3815 White Plains Road, Bronx, New York 10467. (*See* ECF 1, Compl. ¶¶ 1-2.) She was employed from about December 18, 2023 until about November 6, 2024. (*See id*. ¶ 41.) Individual Defendants Gonzalez and Vasquez own, operate, and control Meson Restaurant. (*See id.* ¶ 24.) They had the power to hire and fire Plaintiff, determine wages and compensation, set employee schedules, and maintain employee records. (*See id*. ¶ 36.)

Plaintiff was hired as a waitress, but she spent more than two hours of each workday performing non-tipped duties unrelated to waitressing, such as cleaning and cashiering. (*See id*. ¶ 5.) Plaintiff regularly worked more than 40 hours per week: between December 18, 2023 and May 2024, she typically worked 72 to 98 hours per week. (*See* ECF 32-4, Soto Decl. ¶ 13.) Between May 2024 and October 2024, she typically worked 76 hours per week for two weeks per month and 84 hours per week for two weeks per month. (*See id.* ¶¶ 14-15.) Between mid-October 2024 and November 2024, she typically worked 28 hours per week. (*See id.* ¶ 16.) Throughout her employment, she handled goods in interstate commerce, such as drinks produced outside the State of New York. (*See* ECF 1, Compl. ¶ 43.)

Plaintiff was paid $500.00 to $600.00 per week. (*See* ECF 1, Compl. ¶ 51; ECF 32-4, Soto Decl. ¶ 18.) Her wages did not vary regardless of her hours worked, and she received no meal breaks. (*See* ECF 1, Compl. ¶¶ 52-54; ECF 32-4, Soto Decl. ¶¶ 19-21.) Defendants never notified Plaintiff that her tips would be offset from her wages. (*See* ECF 1, Compl. ¶ 55; ECF 32-4, Soto Decl. ¶ 23.) Defendants took a tip credit even though Plaintiff's non-tipped duties exceeded

20% of each workday. (*See* ECF 1, Compl. ¶ 12.) Plaintiff believes that Defendants designated her as a tipped waitress, instead of a non-tipped employee, so they could pay her at the lower tip-credited rate. (*See id.* ¶ 13.)

Defendants did not give Plaintiff wage statements, as required by NYLL § 195(3). (*See id.* ¶¶ 81, 118.) Defendants never gave Plaintiff a written notice, in English or in Spanish – the latter being her primary language – of her rate of pay, regular pay day, and other information required by NYLL § 195(1). (*See id.* ¶ 59.) Plaintiff was never notified of minimum wage and overtime requirements under the FLSA and NYLL. (*See id.* ¶ 60.)

## II. Procedural History

Plaintiff filed the Complaint on February 25, 2025, alleging violations of the minimum wage and overtime provisions under the FLSA and NYLL; violation of the spread of hours provision under the NYLL; and violation of the notice and recordkeeping requirements, wage statement previsions, and timely payment provisions of the NYLL. (*See* ECF 1, Compl. at 16-21.) Defendants were served with summons and Complaint on April 5, 2025, and proof of service was filed on May 30, 2025. (*See* ECF 9, 10, 11, Affs. of Service.) Defendants had until April 28, 2025 to respond; Your Honor extended that time to June 20, 2025. (*See* ECF 13, Order.) Defendants failed to timely answer.

On July 3, 2025, pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure and Rule 55.2(b) of the Local Rules of this Court, Plaintiff began seeking a default judgment against Defendants. (*See* ECF 16, 17, 18, Proposed Clerk's Certificates of Default.) After re-filings due to filing errors, the Clerk of Court issued certificates of default on July 8, 2025. (*See* ECF 25, 26, 27, Certificates of Default.) On July 15, 2025, Your Honor ordered Plaintiff to show cause for a

default judgment. (*See* ECF 28, Order.) Plaintiff filed a motion for default judgment and attorney declaration in support of the motion on August 27, 2025 (*see* ECF 31, Motion; ECF 32, Declaration of Michael Faillace ("Faillace Decl."); the attorney declaration attached, among other documents, Plaintiff's declaration and a damages chart. (*See* ECF 32-4, Soto Decl.; ECF 32-5, Damages Chart.)

Defendants were served on September 2, 2025 with an order to show cause in writing by September 19, 2025 as to why a default judgment should not be entered against them. (*See* ECF 34, Order To Show Cause; ECF 35, Certificate of Service.) To date, Defendants have failed to respond. On October 13, 2025, Your Honor issued an order stating that Defendants were in default and referring this matter to a magistrate judge for an inquest on damages. (*See* ECF 36, Order; ECF 37, Order of Ref.)

## LEGAL STANDARDS

### I. Obtaining a Default Judgment

A party seeking default judgment must follow Rule 55 of the Federal Rules of Civil Procedure. *See Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 186 (2d Cir. 2015). Under Rule 55(a), when a "party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . . , the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Afterward, under Rule 55(b), should the party still fail to appear or move to set aside the default, the Court may enter a default judgment. *See* Fed. R. Civ. P. 55(b).

In considering whether to enter default judgments, courts are guided by three factors: "(1) whether the default was willful; (2) whether ignoring the default would prejudice the

opposing party; and (3) whether the defaulting party has presented a meritorious defense." *J&J Sports Prods., Inc. v. 1400 Forest Ave Rest. Corp.*, No. 13-CV-4299 (FB) (VMS), 2014 WL 4467774, at *4 (E.D.N.Y. Sept. 10, 2014) (citing *Swarna v. Al-Awadi*, 622 F.3d 123, 142 (2d Cir. 2010)). Courts must be cautious in awarding default judgment because it is an extreme remedy that should only be granted as a last resort. *See Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir. 1981).

## II. Determining Liability

A defendant's default concedes "all well-pleaded allegations of liability." *Rovio Ent., Ltd. v. Allstar Vending, Inc.*, 97 F. Supp. 3d 536, 545 (S.D.N.Y. 2015). However, the Court must then determine if the allegations accepted as true establish liability for the defendants as a matter of law. *See Gesualdi v. Quadrozzi Equip. Leasing Corp*., 629 F. App'x 111, 113 (2d Cir. 2015). "On a motion for default judgment, the burden is on the plaintiff to establish an entitlement to recovery, and a failure to plead sufficient facts may require the denial of the motion." *J&J Sports*, 2014 WL 4467774, at *5. If the Court finds that the well-pleaded allegations state a claim, the Court then analyzes "whether [the] [p]laintiff has provided adequate support for the [requested] relief." *Gucci Am., Inc. v. Tyrrell-Miller*, 678 F. Supp. 2d 117, 119 (S.D.N.Y. 2008). If, however, the Court finds that "the complaint fail[s] to state a claim upon which relief can be granted," the Court may not award damages, "even if the post-default inquest submissions supply the missing information." *Perez v. 50 Food Corp.,* No. 17-CV-7837 (AT) (BCM), 2019 WL 7403983, at *4 (S.D.N.Y. Dec. 4, 2019), *report and recommendation adopted*, 2020 WL 30344 (S.D.N.Y. Jan. 2, 2020).

## III. Determining Damages

A plaintiff "bears the burden of establishing its entitlement to recovery and thus must substantiate its claim with evidence to prove the extent of damages." *Burns v. Scott*, 635 F. Supp. 3d 258, 272 (S.D.N.Y. 2022). The evidence the plaintiff submits must be admissible. *Poulos v. City of New York*, No. 14-CV-3023 (LTS) (BCM), 2018 WL 3750508, at *2 (S.D.N.Y. July 13, 2018), *report and recommendation adopted*, 2018 WL 3745661 (S.D.N.Y. Aug. 6, 2018); *see also House v. Kent Worldwide Mach. Works, Inc.*, 359 F. App'x 206, 207 (2d Cir. 2010) ("[D]amages must be based on admissible evidence."). If the documents the plaintiff has submitted provide a "sufficient basis from which to evaluate the fairness of" the requested damages, the Court need not conduct an evidentiary hearing. *Fustok v. ContiCommodity Servs. Inc.*, 873 F.2d 38, 40 (2d Cir. 1989); *see also Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997) (explaining that a court may calculate damages based on declarations and documentary evidence, "as long as [the court has] ensured that there [is] a basis for the damages specified in the default judgment").

In situations where the employer does not bring forward accurate or complete payroll records, "an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Kuebel v. Black & Decker Inc.*, 643 F. 3d 352, 362 (2d Cir. 2011) (quoting *Anderson v. Mt. Clemens Potter Co.*, 328 U.S. 680, 687 (1946)). A court may credit a plaintiff's "recollections regarding their hours and pay in conducting its inquest. Nevertheless, the [c]ourt must ensure that the [p]laintiffs' approximations and estimates are reasonable and appropriate." *Coley v. Vannguard*

*Urb. Improvement Ass'n, Inc.*, No. 12-CV-5565 (PKC) (RER), 2018 WL 1513628, at *7 (E.D.N.Y. Mar. 27, 2018), *as amended* (Mar. 29, 2018). The default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

## DISCUSSION

### I. Default Judgment

In accordance with the two-step process set forth in Rule 55, the Clerk of the Court issued the Certificates of Default (ECF 25, 26, 27), and Your Honor entered the Default Judgment Order (ECF 36). On the question whether the default was willful, the Court may infer that it was, based on Defendants' failure to submit any reply to the Complaint and the Default Judgment Order. *See Indymac Bank, F.S.B. v. Nat'l Settlement Agency, Inc.*, No. 07-CV-6865 (LTS) (GWG), 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007) (concluding that the defendant's non-appearance in an action and its failure to respond to the complaint and subsequent motion for default judgment "indicate[d] willful conduct").

On the issue of prejudice, delaying entry of a default judgment may prejudice Plaintiff. *See Inga v. Nesama Food Corp.*, No. 20-CV-0909 (ALC) (SLC), 2021 WL 3624666, at *6 (S.D.N.Y. July 30, 2021) (finding that an FLSA plaintiff would "be prejudiced in the absence of a default judgment, not only by the delay in resolving this action, but by his inability to recover from another source for the lost wages and other losses he sustained while working for Defendants"), *report and recommendation adopted*, 2021 WL 3617191 (S.D.N.Y. Aug. 16, 2021).

As to a potentially meritorious defense, Defendants have presented no defense at all. Thus, the requirements of Rule 55 are satisfied, and the relevant factors weigh in Plaintiff's favor. I conclude that entry of a default judgment is proper in this case.

## II. Liability

### A. Jurisdiction and Venue

The Court has subject matter jurisdiction because Plaintiff brings claims under the FLSA, which is a federal statute. *See* 28 U.S.C. § 1331. The Court has supplemental jurisdiction over the NYLL claims, which share the same common nucleus of operative facts as Plaintiff's FLSA claims, *see* 28 U.S.C. § 1367.

The Court has personal jurisdiction over Defendants, which is "a necessary prerequisite to entry of a default judgment." *Reilly v. Com*., No. 15-CV-5118 (PAE) (BCM), 2016 WL 6837895, at *2 (S.D.N.Y. Oct. 31, 2016). New York law authorizes personal jurisdiction over domestic corporations, *see* N.Y. C.P.L.R. ("CPLR") § 301 and over non-domiciliary defendants who transact business within the state, *see* CPLR § 302(a)(1). "A court has general personal jurisdiction over an individual defendant sued in his or her place of domicile and over a corporate defendant sued in its state of incorporation or principal place of business." *Holguin v. Quality Furniture NY LLC*, No. 23-CV-0004 (AT) (RFT), 2024 WL 4954048, at *5 (S.D.N.Y. Nov. 8, 2024) (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021)), *report and recommendation adopted*, 2025 WL 50016 (S.D.N.Y. Jan. 8, 2025). "A court has specific personal jurisdiction over a defendant who purposefully avails itself of the privilege of doing business in the forum state where the plaintiff's claim arises out of the defendant's contacts with the forum." *Holguin*, 2024 WL 4954048, at *5.

The Court has general personal jurisdiction over the Corporate Defendant under CPLR § 301, because the company is incorporated in the State of New York. (*See* ECF 1, Compl. ¶ 25.) The Court also has specific personal jurisdiction over Gonzalez and Vasquez: under CPLR

§ 302(a)(1), "a corporate officer who has played a part in the corporate activities that gave rise to the action is likewise subject to jurisdiction." *Ramiro Aviles v. S&P Glob., Inc.*, 380 F. Supp. 3d 221, 261 (S.D.N.Y. 2019); *see also Suriel v. Cruz,* No. 20-CV-8442 (VSB) (SLC), 2022 WL 1750232, at *8 (S.D.N.Y. Jan. 10, 2022) (finding that individual defendants, who owned and operated a corporate defendant, were subject to personal jurisdiction), *report and recommendation adopted*, 2022 WL 1751163 (S.D.N.Y. May 31, 2022); *Inga*, 2021 WL 3624666, at *6 (same). While Gonzalez and Vasquez's domiciles are not identified, both individuals are subject to specific personal jurisdiction under CPLR § 302 because they are "owner[s], officer[s], and/or agent[s]" of the Corporate Defendant with operational control or significant functional control. (ECF 1, Compl. ¶¶ 26-27.) Gonzalez and Vasquez were also properly served by Plaintiff with the summons and Complaint. (*See* ECF 10, Vasquez Aff. of Service; ECF 11, Gonzalez Aff. of Service.)

Venue is proper because Corporate Defendant operates its business in this District, as evidenced by Meson Restaurant's operations in the Bronx (*see* ECF 1, Compl. ¶ 2), and because a substantial part of events and omissions giving rise to Plaintiff's claims occurred in this District. *See* 28 U.S.C. § 1391(b)(2).

B. Statute of Limitations

Under the NYLL, the statute of limitations is six years, and recovery of damages is limited to the six-year period prior to any filed action. *See* NYLL § 198(3). Under the FLSA, as relevant here, the limitations period is two years. *See* 29 U.S.C. § 255(a).

Plaintiff alleges that she began working for Defendants on approximately December 18, 2023. (*See* ECF 1, Compl. ¶ 41.) She filed the Complaint on February 25, 2025. (*See* ECF 1, Compl.) Given that Plaintiff's employment was entirely within the statutory period and that

Plaintiff filed suit fewer than two years after she began working at the restaurant, Plaintiff's claims are timely under the NYLL and FLSA.

C. Elements of Claims Under the FLSA and NYLL

Both the FLSA and the NYLL require that employers pay their employees a minimum wage. *See* 29 U.S.C. § 206(a); NYLL § 652(1). "To state a claim for wages under the FLSA, a plaintiff must allege that: (1) he was the defendant's employee; (2) his work involved interstate activity; and (3) he worked for hours for which he did not receive minimum or overtime wages." *Burns*, 635 F. Supp. 3d at 274. The NYLL requires a similar showing, except it does not direct plaintiffs to "show a nexus with interstate commerce or a minimum amount of [ ] sales." *Id*. To recover overtime compensation under the FLSA and NYLL, a plaintiff must provide the approximate number of unpaid overtime hours that he or she worked. *See Zhong v. August Corp.*, 498 F. Supp. 2d 625, 628 (S.D.N.Y. 2007). A plaintiff must also specify "the various positions he was working in at the time he was allegedly denied overtime compensation," explain if those positions were actually exempt, or "set forth the number of hours he allegedly worked without overtime compensation." *James v. Countrywide Fin. Corp.*, 849 F. Supp. 2d 296, 321 (E.D.N.Y. 2012).

The NYLL but not the FLSA also allows recovery for spread-of-hours pay, which requires plaintiffs to "allege that they worked more than ten hours per day and never received any spread-of-hours pay." *Zokirzoda v. Acri Cafe Inc.*, No. 18-CV-11630 (JPO), 2020 WL 359908, at *3 (S.D.N.Y. Jan. 22, 2020); *see also Zhen Ming Chen v. Y Cafe Ave B Inc.*, No. 18-CV-4193 (JPO), 2019 WL 2324567, at *4 (S.D.N.Y. May 30, 2019); NYLL §§ 650, 662-63. Under the NYCRR, for each day on which the spread of hours – or the "length of the interval between the beginning

and end of an employee's workday" – exceeds ten hours, employees are entitled to "receive one additional hour of pay at the basic minimum hourly rate." NYCRR tit. 12, § 146-1.6(a).

1. Employment Relationship

In interpreting the FLSA, courts afford the term "employer" an "expansive definition with striking breadth." *Mondragon v. Keff*, No. 15-CV-2529 (JPO) (BCM), 2019 WL 2551536, at *7 (S.D.N.Y. May 31, 2019) (quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992)), *report and recommendation adopted*, 2019 WL 2544666 (S.D.N.Y. June 20, 2019). "[C]ourts in this District regularly apply the same tests to determine whether entities were joint employers under NYLL and the FLSA." *Martin v. Sprint United Mgmt. Co.*, 273 F. Supp. 3d 404, 422 (S.D.N.Y. 2017).

I accept as true all well-supported facts in the Complaint, which shows that Plaintiff was employed as Defendants as a waitress. (*See* ECF 1, Compl. ¶ 10.)

2. Interstate Commerce

For an FLSA claim, Plaintiff must establish that there was engagement in interstate commerce either through her own personal engagement or through the "enterprise," her employer. *See Georges v. Detroit Pizza NYC LLC*, No. 23-CV-11164 (LJL), 2024 WL 1195727, at *3 (S.D.N.Y. Mar. 20, 2024); *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 353-54 (E.D.N.Y. 2015). An employer is "engaged in commerce" when its employees "handle goods or materials that have moved or been produced in interstate commerce" and its annual gross volume of sales exceeds $500,000. *Georges*, 2024 WL 1195727, at *3; 29 U.S.C. § 203(s)(1)(A).

Plaintiff has established both individual and enterprise engagement with interstate commerce. Plaintiff regularly handled interstate goods such as drinks that were produced

outside the State of New York. (*See* ECF 1, Compl. ¶ 43.) Additionally, Defendants "directly engaged in interstate commerce" and had a "gross annual volume of sales of not less than $500,000." (ECF 1, Compl. ¶¶ 37-8.) These allegations are deemed admitted due to Defendants' default and are sufficient to support Plaintiff's claims under the FLSA.

3. Compensation at the Minimum Wage

The FLSA presumes that "a weekly salary covers only the first 40 hours," unless an employment agreement indicates otherwise. *Cazares v. 2898 Bagel & Bakery Corp.*, No. 18-CV-5953 (AJN) (DF), 2022 WL 1410677, at *9 (S.D.N.Y. Apr. 7, 2022), *report and recommendation adopted*, 2022 WL 1406203 (S.D.N.Y. May 4, 2022). "Courts in this District have extended this rebuttable presumption to apply under the NYLL." *Reyes v. Cafe Cousina Rest. Inc.*, No. 18-CV-1873 (PAE) (DF), 2019 WL 5722475, at *4 (S.D.N.Y. Aug. 27, 2019) (collecting cases), *report and recommendation adopted*, 2019 WL 5722109 (S.D.N.Y. Oct. 7, 2019). As Defendants are in default, they are unable to rebut the presumption that Plaintiff's weekly salary of $500.00 to $600.00 covered the first 40 hours of her work. (*See* ECF 36, Order; ECF 32-5, Damages Chart.)

The FLSA mandates that employees must be paid at least $7.25 per hour. Under the NYLL, starting December 31, 2022, the minimum wage rate in New York City was $15.00 per hour; this rate was increased to $16.00 on January 1, 2024.[2] Because Plaintiff's non-tipped duties took up more than 20% of each workday, she was entitled to the general minimum wage, as opposed to the lower minimum wage for tipped workers. (*See* ECF 1, Compl. ¶¶ 12, 71.) Because Plaintiff was paid a salary of $500.00 to $600.00 per 40-hour week, regardless of

[2] *See History of the Minimum Wage in New York State,* Dep't of Lab., https://dol.ny.gov/history-minimum-wage-new-york-state (last visited August 17, 2026).

her hours worked, she received an hourly wage of $13.75 from the beginning of her employment through mid-October 2024, which is below the City's minimum wage. (*See* ECF 32-5, Damages Chart.)[3] Thus, Plaintiff has stated a claim for unpaid wages under the NYLL.

4. Compensation for Overtime Work

Both the FLSA and NYLL require employers to pay for overtime hours worked beyond 40 hours per week at a rate of one-and-one-half times the employee's regular rate of pay. *See* 29 U.S.C. § 207(a)(1); 12 NYCRR § 142-2.2. Plaintiff never received overtime pay, and between December 18, 2023, and October 14, 2024, she worked well beyond 40 hours per week – a between 72 to 98 hours per week. (*See* ECF 32-4, Soto Decl. ¶¶ 13-15.) Thus, Plaintiff has stated a claim for unpaid overtime wages under the FLSA and NYLL.

Although Plaintiff has made allegations sufficient to hold Defendants liable under both the FLSA and NYLL, she is not entitled to double recovery of back wages. *See Hernandez v. Jrpac Inc.*, No. 14-CV-4176 (PAE), 2016 WL 3248493 at *31 (S.D.N.Y. June 9, 2016) (citing *Gen. Tel. Co. of the Nw. v. EEOC*, 446 U.S. 318, 333 (1980)). The Court may, however, exercise its discretion to award "damages under the statute providing the greatest amount of relief." *Hengjin Sun v. China 1221, Inc.*, No. 12-CV-7135 (RJS), 2016 WL 1587242 at *2 (S.D.N.Y. Apr. 19, 2016). Thus, I respectfully recommend that damages be awarded under the NYLL.

5. Compensation for Spread of Hours Pay

The NYLL requires employers to provide "one additional hour of pay at the basic minimum hourly rate" for "each day on which the spread of hours exceeds 10." NYCRR tit. 12,

[3] To calculate Plaintiff's hourly wage, I use her mean weekly salary of $550.00.

§ 146-1.6; *see also* NYLL §§ 650, 662-63. Spread of hours is defined as the "length of the interval between the beginning and end of an employee's workday." NYCRR tit. 12, § 146-1.6*.* Plaintiff has alleged that she never received the mandated extra hour's pay for the spread of hours she worked for any day she worked more than ten hours. (*See* ECF 1, Compl. ¶¶ 8, 111.) Thus, Plaintiff has stated a claim for unpaid spread of hours pay under the NYLL.

6. Statutory Wage Notices and Statements

Under the NYLL, an employer is required to provide a notice containing the "rate or rates of pay and basis thereof"; "allowances, if any, claimed as part of the minimum wage"; and "the regular pay day designated by the employer." NYLL § 195(1)(a). Failure to do so within ten business days of the first day of employment creates a penalty of $50.00 for each workday that a violation occurs, not to exceed a total of $5,000.00, which is reached after 100 days. *See* NYLL § 198(1-b). The NYLL also requires a wage statement to be provided to an employee with each payment of wages. *See* NYLL § 195(3). Failure to do so creates a penalty of $250.00 for each workday that a violation occurs, not to exceed a total of $5,000.00, which is reached after 20 days. *See* NYLL § 198(1-d).

A court may deny these statutory damages if a plaintiff does not have standing to seek such damages under Article III of the U.S. Constitution. *See Guthrie v. Rainbow Fencing Inc.*, 113 F. 4th 300, 305 (2d Cir. 2024). Such is the case if there is no injury traceable to the violation of the wage notice and statement requirements. *See id.* at 302*.* Accordingly, to recover, a plaintiff must demonstrate she suffered concrete harm that was caused by the employer's failure to provide accurate notice. *See id.* at 308. To establish the required causal connection, the plaintiff

must show that, had notice been provided, she would have undertaken "advocacy and plausibly would have avoided some actual harm or obtained some actual benefit." *Id.*

Defendants failed to provide Plaintiff with payroll notice and wage statements. (*See* ECF 1, Compl. ¶ 59.) However, Plaintiff alleges no harm, let alone a causal connection. Plaintiff has failed to show that she has standing in connection with her wage notice and statement claims.

## III. Damages

### A. Evidentiary Basis

The Court must determine whether Plaintiff has provided sufficient evidence to support her claimed damages. *See Transatlantic Marine*, 109 F. 3d at 111; *Bleecker v. Zetian Sys., Inc.,* No. 12-CV-2151 (DLC), 2013 WL 5951162, at *6 (S.D.N.Y. Nov. 1, 2013). Plaintiff filed a declaration attesting to the dates and circumstances of her employment. (*See generally* ECF 32-4, Soto Decl.) Defendants have not responded to the Court's orders, nor have they provided any contrary evidence. (*See* ECF 25, 26, 27, Clerk's Certificates of Default.) Plaintiff has met her evidentiary burden of proving damages, and an in-person hearing is unnecessary, because her submissions, combined with Defendants' admissions resulting from their default, provide a sufficient basis for evaluating her damages request. *See Fustok*, 873 F. 2d at 40; *Boston Sci. Corp. v. N.Y. Ctr. for Specialty Surgery*, No. 14-CV-6170 (RRM), 2015 WL 13227994, at *3 (E.D.N.Y. Aug. 31, 2015).

### B. Wages

The applicable timeframe is December 18, 2023 to November 6, 2024, including five periods. (*See* ECF 32-4, Soto Decl. ¶¶ 13-15.) From the start of Plaintiff's employment through October 13, 2024, Plaintiff was paid an average salary of $550.00 per week. (*See id.*)

- Between December 18, 2023 and December 31, 2023 ("First Pay Period"), Plaintiff worked an average of 85 hours per week, with 45 hours of overtime per week. (*See* ECF 32-5, Damages Chart.)[4]

- Between January 1, 2024 and May 14, 2024 ("Second Pay Period"), Plaintiff again worked an average of 85 hours per week, with 45 hours of overtime per week. (*See id.*)

- Between May 15, 2024 and August 6, 2024 ("Third Pay Period"), Plaintiff worked an average of 76 hours per week, with 36 hours of overtime per week. (*See id.*)

- Between August 7, 2024 and October 14, 2024 ("Fourth Pay Period"), Plaintiff worked an average of 84 hours per week, with 44 hours of overtime per week. (*See id.*)

- Between October 15, 2024 and November 6, 2024 ("Fifth Pay Period"), Plaintiff worked an average of 28 hours per week. (*See id.*)

1. Unpaid Minimum Wages

Between December 31, 2022 and December 31, 2023, New York City mandated a minimum wage of $15.00 per hour. *See* NYCRR tit. 12 § 190-2.1(a). During Plaintiff's First Pay Period, at the applicable minimum wage of $15.00 per hour, Plaintiff should have been paid $600.00 per week in minimum wages for her first 40 hours of work, for a total of $1,200.00 during the two-week period. Defendants paid her a flat rate of $550.00 per week, on average. Thus, Plaintiff should have been paid an additional $50.00 per week, for an underpayment in minimum wages of $100.00 during the First Pay Period.

[4] The Damages Chart (ECF 32-5) is consistent with the Soto Declaration (ECF 32-4, ¶¶ 13-16, 18-19). However, the Declaration appears to contains two typos: paragraphs 14 and 15 both state "May 2024 until on or about October 2024," when paragraph 14 should state "May 2024 until on or about August 2024" and paragraph 15 should state "August 2024 until on or about October 2024." Plaintiff declares that she typically worked 76 hours and 84 hours per week in paragraphs 14 and 15, respectively, which are consistent with the hours worked in the May–August 2024 and August–October 2025 ranges on the Damages Chart. Any simplifications used in the Damages Chart are fairly derived from the Declaration (such as by taking the average for a range of hours).

On January 1, 2024, New York City increased its minimum wage to $16.00 per hour. *See id.* This rate covers all Plaintiff's subsequent employment. During her Second through Fifth Pay Periods, at the applicable minimum wage of $16.00 per hour, Plaintiff should have been paid $640.00 per week in minimum wages for her first 40 hours of work. Thus, Plaintiff should have been paid an additional $90.00 per week, for an underpayment in minimum wages of $3,690.00 during the Second through Fourth Pay Periods (spanning 41 weeks). Combined with the shortfall from the First Pay Period, this totals an underpayment of $3,790.00.

During the Fifth Pay Period, Plaintiff received $550.00 per week on average (for a total of $1,650.00 across three weeks) but worked 28 hours per week only; thus, no outstanding wages are owed. During her employment, Plaintiff should have been paid an additional $3,790.00 in weekly wages, as summarized in the table below.

| CALCULATION OF UNPAID MINIMUM WAGES | | | | | | |
|---|---|---|---|---|---|---|
| **Period** | **Number of Weeks** | **Average Hours/Week** | **Hourly Minimum Wage ($)** | **Expected Minimum Wage Per Period (Hourly Minimum Wage * 40 hours[5] * Number of Weeks) ($)** | **Actual Wage Per Period ($)** | **Underpayment Per Period: (Expected Minimum Wages Per Period – Actual Wages Per Period) ($)** |
| December 18, 2023 – December 31, 2023 | 2 | 85 | 15.00 | 1,200.00 | 1,100.00 | 100.00 |
| January 1, 2024 – May 14, 2024 | 19 | 85 | 16.00 | 12,160.00 | 10,450.00 | 1,710.00 |
| May 15, 2024 – August 6, 2024 | 12 | 76 | 16.00 | 7,680.00 | 6,600.00 | 1,080.00 |
| August 7, 2024 – October 14, 2024 | 10 | 84 | 16.00 | 6,400.00 | 5,500.00 | 900.00 |
| October 15, 2024 – November 6, 2024 | 3 | 28 | 16.00 | 1,344.00 | 5,500.00 | 0 |
| **TOTAL** | | | | | | **3,790.00** |

2. Unpaid Overtime Premium Wages

Between December 31, 2022 and December 31, 2023, New York City mandated a minimum wage of $15.00 per hour. *See* NYCRR tit. 12 § 190-2.1(a). Defendants did not pay Plaintiff any overtime wages. (ECF 1, Compl. ¶ 67.) She should have been paid $22.50 per hour for every overtime hour worked, calculated at one-and-one-half times the minimum wage of $15.00 per hour. During her First Pay Period, Plaintiff worked an average of 45 hours of

[5] For the Fifth Pay Period, the hourly minimum wage is multiplied by 28 hours, not 40 hours, to reflect that Plaintiff worked 28 hours per week.

overtime per week. This results in $1,012.50 in unpaid overtime wages per week, calculated at $22.50 times 45 hours. In this two-week period, Plaintiff should have been paid $2,025.00 in overtime wages.

Starting on January 1, 2024, New York City's minimum wage rate became $16.00 per hour. *See id.* Defendants did not pay Plaintiff any overtime wages. (ECF 1, Compl. ¶ 67.) She should have been paid $24.00 per hour for every overtime hour worked, calculated at one-and-one-half times the minimum wage of $16.00 per hour. During her Second Pay Period, Plaintiff on average worked 45 hours of overtime per week. This resulted in $1,080.00 in unpaid overtime wages per week, calculated at $24.00 times 45 hours. In this 19-week period, Plaintiff should have been paid $20,520.00 in overtime wages.

During her Third Pay Period, Plaintiff worked an average of 36 hours of overtime per week. This resulted in $864.00 in unpaid overtime wages per week, calculated at $24.00 times 36 hours. In this 12-week period, Plaintiff should have been paid $10,368.00 in overtime wages.

During her Fourth Pay Period, Plaintiff worked an average of 44 hours of overtime per week. This resulted in $1,056.00 in unpaid overtime wages per week, calculated at $24.00 times 44 hours. In this ten-week period, Plaintiff should have been paid $10,560.00 in overtime wages.

During her Fifth Pay Period, Plaintiff did not work overtime.

Thus, over the entire period, Plaintiff should have been paid $43,473.00 in overtime premium wages, as summarized in the table below.

| CALCULATION OF UNPAID OVERTIME PREMIUM WAGES | | | | | |
|---|---|---|---|---|---|
| **Period** | **Number of Weeks** | **Average Hours/Week** | **Average Overtime Hours (Average Hours/Week – 40)** | **Hourly Overtime Wage (Minimum Wage * 1.5) ($)** | **Total Underpayment Per Period: (Hourly Overtime Wage * Average Overtime Hours * Number of Weeks) ($)** |
| December 18, 2023 – December 31, 2023 | 2 | 85 | 45 | 22.50 | 2,025.00 |
| January 1, 2024 – May 14, 2024 | 19 | 85 | 45 | 24.00 | 20,520.00 |
| May 15, 2024 – August 6, 2024 | 12 | 76 | 36 | 24.00 | 10,368.00 |
| August 7, 2024 – October 14, 2024 | 10 | 84 | 44 | 24.00 | 10,560.00 |
| October 15, 2024 – November 6, 2024 | 3 | 28 | 0 | 24.00 | 0 |
| **TOTAL** | | | | | **43,473.00** |

C. Spread of Hours

Under New York law, if an employee's workday spans more than ten hours, she is entitled to "one additional hour of pay at the basic minimum hourly rate." NYCRR tit. 12, § 146-1.6. Plaintiff falls under the provision's scope as a hospitality worker. *See id.*

During the First Pay Period, New York City's minimum wage was $15.00 per hour. *See id.* § 190-2.1(a). Plaintiff qualified for the spread of hours premium six days per week. In this two-week period, Plaintiff should have received $180.00 in spread of hours pay, calculated at $15.00 per day times six days times two weeks.

During the Second through Fourth Pay Periods, New York City's minimum wage was $16.00 per hour. *See id.* Plaintiff qualified for the spread of hours premium six days per week. In

the 41 weeks across the three periods, Plaintiff should have received $3,936.00 in spread of hours pay, calculated at $16.00 per day times six days times 41 weeks.

During the Fifth Pay Period, Plaintiff's workdays did not span more than ten hours. Accordingly, over the entire period, she was entitled to $4,116.00 in spread of hours pay, as summarized in the table below.

| CALCULATION OF UNPAID SPREAD OF HOURS WAGES | | | | |
|---|---|---|---|---|
| **Period** | **Number of Weeks** | **Days/Week Requiring Spread of Hours Wages** | **Hourly Minimum Wage ($)** | **Total Underpayment Per Period: (Spread of Hours Days/Week * Number of Weeks * Hourly Minimum Wage) ($)** |
| December 18, 2023 – December 31, 2023 | 2 | 6 | 15.00 | 180.00 |
| January 1, 2024 – May 14, 2024 | 19 | 6 | 16.00 | 1,824.00 |
| May 15, 2024 – August 6, 2024 | 12 | 6 | 16.00 | 1,152.00 |
| August 7, 2024 – October 14, 2024 | 10 | 6 | 16.00 | 960.00 |
| October 15, 2024 – November 6, 2024 | 3 | 0 | 16.00 | 0 |
| **TOTAL** | | | | **4,116.00** |

***

Over the entire period, Plaintiff should have been paid an additional $51,379.00 in earned minimum, overtime, and spread of hours wages.

D. Liquidated Damages

Under both the FLSA and the NYLL, a plaintiff who has demonstrated that she was improperly denied wages may recover these unpaid wages, as well as liquidated damages equal to 100% of what was owed. *See Burns*, 635 F. Supp. 3d at 280-81. A court has discretion to deny liquidated damages if the employer can show that its failure to provide the correct amount in wages was in "good faith and that he had reasonable grounds for believing that his act or omission was not in violation of the [FLSA]." 29 U.S.C. § 260. The same applies for the NYLL. *See* NYLL §§ 198(1-a), 663(1).

The Second Circuit precludes a plaintiff from recovering liquidated damages under both the FLSA and the NYLL. *See Chowdhury v. Hamza Express Food Corp.*, 666 F. App'x 59, 61 (2d Cir. 2016). A plaintiff should recover liquidated damages only under the statute that provides greatest relief. *See Burns*, 635 F. Supp. 3d at 281. The NYLL allows for recovery of both prejudgment interest and liquidated damages, *see Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 515 (S.D.N.Y. 2017), while the FLSA does not. *See Mondragon*, 2019 WL 2551536, at *11. Thus, Plaintiff should be permitted to recover liquidated damages under the NYLL rather than the FLSA.

Having defaulted, Defendants have not shown that their failure to provide the correct amount in wages was done in good faith and that there were reasonable grounds for believing their acts did not violate the NYLL. *See id*. Thus, Plaintiff is entitled to liquidated damages in an amount equal to her unpaid weekly, overtime, and spread of hours pay. *See Burns*, 635 F. Supp. 3d at 281. Plaintiff should be awarded $51,379.00 in total liquidated damages, which is equal to 100% of her compensatory damages under the NYLL.

E. Statutory Damages

As Plaintiff lacks the necessary Article III standing to recover statutory damages under the NYLL, I respectfully recommend that she not be awarded damages for Defendants' failure to provide wage statements and wage notices.

F. Prejudgment Interest

Plaintiff seeks prejudgment interest on amounts due for compensatory damages under the NYLL. The Second Circuit has held that, "even where a plaintiff is awarded liquidated damages under the NYLL, prejudgment interest still is appropriate" because state liquidated damages are punitive in nature. *Xochimitl v. Pita Grill of Hell's Kitchen, Inc.*, No. 14-CV-10234 (JGK) (JLC), 2016 WL 4704917, at *18 (Sept. 8, 2016). By contrast, Plaintiff cannot recover prejudgment interest and liquidated damages awarded under the FLSA, which presumes that liquidated damages include prejudgment interest. *See id.* Therefore, Plaintiff should be awarded prejudgment interest on her NYLL minimum wage, overtime, and spread of hours claims. *See Soriano v. Amoun Inc.*, No. 16-CV-4257 (ALC), 2017 WL 11745947, at *4 (S.D.N.Y. Mar. 16, 2017) (applying prejudgment interest to minimum wage, overtime, and spread of hours damages under the NYLL); *Maldonado v. La Nueva Rampa, Inc.*, No. 10-CV-8195 (LLS) (JLC), 2012 WL 1669341, at *10 (S.D.N.Y. May 14, 2012) (same).

State law sets the interest rate at 9% per year. *See* CPLR § 5004. When damages are "incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." *Id.* § 5001(b). "Simple prejudgment interest is calculated . . . by multiplying the principal by the interest rate by the time period – from a singular, midpoint date – up until and including the date judgment

is entered." *Xochimitl*, 2016 WL 4704917, at *18. Courts can determine the midpoint date by looking for "the median date between the earliest ascertainable date the cause of action existed and the date the action was filed." *Yuquilema v. Manhattan's Hero Corp.*, No. 13-CV-0461 (WHP) (JLC), 2014 WL 4207106, at *12 (S.D.N.Y. Aug. 20, 2014).

Plaintiff worked for Defendants over the course of five pay periods. The midpoint dates are December 24, 2023 (First Pay Period); March 8, 2024 (Second Pay Period); June 25, 2024 (Third Pay Period); September 10, 2024 (Fourth Pay Period); and October 26, 2024 (Fifth Pay Period). The end date for purposes of the prejudgment interest calculations is August 24, 2026, the date of this report and recommendation.

I respectfully recommend that Plaintiff receive prejudgment interest of $10,523.61 as of August 24, 2026, the date of this report and recommendation, with an additional $12.67 per day for every day thereafter until the Clerk of Court enters a final judgment.[6] The calculations are summarized in the table below.[7]

---

[6] New York law states that the endpoint for calculating prejudgment interest should be the "date of entry of final judgment." CPLR § 5002; *see also Schipani v. McLeod*, 541 F.3d 158, 165 (2d Cir. 2008).

[7] The formula for calculating the prejudgment interest for each pay period is: [Number of Days Between Midpoint and August 24, 2026] / 365 days * 9% interest rate * [Unpaid Period Minimum Wages + Overtime Wages + Spread of Hours Wages].

The formula for calculating the daily prejudgment interest per period is: [Unpaid Period Minimum Wages + Overtime Wages + Spread of Hours Wages] * 9% interest / 365 days. This results in $0.57 per day for the First Pay Period, $5.93 per day for the Second Pay Period, $3.11 per day for the Third Pay Period, $3.06 for the Fourth Pay Period, and nothing for the Fifth Pay Period.

| CALCULATION OF PREJUDGMENT INTEREST | | | | | | |
|---|---|---|---|---|---|---|
| **Period** | **Unpaid Minimum Wages ($)** | **Unpaid Overtime Wages ($)** | **Unpaid Spread of Hours Wages ($)** | **Prejudgment Interest on Unpaid Minimum Wages ($)** | **Prejudgment Interest on Unpaid Overtime Wages ($)** | **Prejudgment Interest on Unpaid Spread of Hours Wages ($)** |
| December 18, 2023 – December 31, 2023 | 100.00 | 2,025.00 | 180.00 | 24.02 | 486.33 | 43.23 |
| January 1, 2024 – May 14, 2024 | 1,710.00 | 20,520.00 | 1,824.00 | 379.06 | 4,548.69 | 404.33 |
| May 15, 2024 – August 6, 2024 | 1,080.00 | 10,368.00 | 1,152.00 | 210.38 | 2,019.63 | 224.40 |
| August 7, 2024 – October 14, 2024 | 900.00 | 10,560.00 | 960.00 | 158.23 | 1,856.54 | 168.78 |
| October 15, 2024 – November 6, 2024 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Sub-totals** | | | | 771.68 | 8,911.19 | 840.74 |
| **TOTAL** | | | | 10,523.61 | | |

G. Post-Judgment Interest

Under 28 U.S.C. § 1961, Plaintiff is entitled to post-judgment interest on her money judgment in a civil case recovered in a district court. Post-judgment interest is "calculated from the date of the entry of judgment, as a rate equal to the weekly average one-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of judgment." 28 U.S.C. § 1961(a).

Although Plaintiff's Complaint requested an award of post-judgment interest (*see* ECF 1, Compl. at 24), Plaintiff has not requested such an award in connection with this Motion (*see* ECF 32, Faillace Decl.). However, the Second Circuit has recognized that an award of post-

judgment interest is mandatory. *See Schipani v. McLeod*, 541 F.3d 158, 165 (2d Cir. 2008). Thus, I respectfully recommend that Your Honor award Plaintiff post-judgment interest in an amount consistent with the provisions of 28 U.S.C. § 1961.

H. Costs and Attorney's Fees

The FLSA and the NYLL permit a successful plaintiff to recover costs and reasonable attorney's fees. *See* 29 § U.S.C. 216(b); NYLL §§ 198, 663. Plaintiff seeks an award of $630.00 in costs and $5,150.00 in reasonable attorney's fees, for a total of $5,780.00. (*See* ECF 32, Faillace Decl. ¶¶ 70-71.)

1. Costs

Costs that are reasonable are those that are incurred by the attorney and normally charged to the client. *See Burns*, 635 F. Supp. 3d at 285 (citing *Leblanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998)). Plaintiff has attached an invoice of costs in support of her request. (*See* ECF 32-6, Billing Chart at 2.) The costs include filing fees and fees for executing service of process, which are the types of costs typically found to be reasonable. *See Farez v. Pinery Cleaners*, 22-CV-6728 (VSB) (SDA), 2023 WL 6977058 at *6 (S.D.N.Y. July 21, 2023). These costs listed in the invoice and sought by Plaintiff total $630.00. Thus, I respectfully recommend Plaintiff be awarded $630.00 for her reasonable costs.

2. Attorney's Fees

Courts determine reasonable attorney's fees based on several factors, including the labor and skill required, the difficulty of the issues, the customary hourly rate of the attorney, the attorney's experience, reputation, and ability, and awards in similar cases. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 186 n.3 (2d Cir. 2008).

Additionally, according to the "forum rule," courts typically look to the prevailing rates in the district in which the court sits to determine reasonable rates. *See Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174-75 (2d Cir. 2009). Once the reasonable rate is determined, a court will multiply the number of hours reasonably expended by the reasonable hourly rate. *See Arbor Hill*, 522 F.3d at 186.

*a. Reasonable Hourly Rate*

Plaintiff's counsel, Michael Faillace, seeks compensation at an hourly rate of $450.00 for himself and at an hourly rate of $125.00 for two individuals, PL and EM, who appear to be paralegals. (*See* ECF 32, Faillace Decl. ¶ 72; ECF 32-6, Billing Chart.)[8]

Mr. Faillace's rate falls within the typical range of $250.00 and $450.00 per hour awarded in FLSA cases in this District, where "the upper range [is] appropriate for the most experienced FLSA litigators." *Lee v. Mani & Pedi Inc.*, No. 20-CV-10787 (JCM), 2022 WL 3645118, at *4-5 (S.D.N.Y. Aug. 24, 2022) (exercising discretion to adjust counsel's rate, lowering it due to "questionable litigation decisions," "fail[ure] to follow Court orders," and lack of experience). Mr. Faillace has many years of experience in employment litigation and is a managing member of his firm. However, his reputation has been tarnished by his prior two-year suspension from practicing in this District, due to his "repeatedly taking fees from settlements in excess of the amounts awarded to him by court order." *Crismeli Deli Grocery Inc.*, No. 19-CV-10053 (VSB) (BCM), 2024 WL 3730115, at *10 (S.D.N.Y. June 28, 2024), *report and*

---

[8] "PL" is identified as a paralegal. (*See* ECF 32, Faillace Decl. ¶ 72(b).) "EM" is not identified as a paralegal, but his or her rate is listed as $125.00 per hour, a paralegal rate, with billed tasks including intake and filing court documents, which are paralegal tasks. (*See generally* ECF 32-6, Billing Chart.)

*recommendation adopted*, 2024 WL 3730300 (S.D.N.Y. Aug. 8, 2024). Mr. Faillace's reputation bears on the reasonableness of his billing rate, even though his work was completed after his suspension. *See Arbor Hill*, 522 F.3d at 186 n.3.

Courts have previously found Mr. Faillace's billed rate of $450.00 to be excessive in similar cases. *See Martinez v. W. Side Pizza LLC*, No. 18-CV-5834 (JGK) (OTW), 2024 WL 4494884, at *9 (S.D.N.Y. Apr. 4, 2024) (collecting cases and adjusting Mr. Faillace's rate to $400.00 due to the lack of complexity in a default case); *Basurto v. Giants Deli Inc.*, No. 25-CV-4903 (DEH) (SLC), 2026 WL 789516, at *11 (S.D.N.Y. Jan. 6, 2026) (awarding Mr. Faillace attorney's fees at the "more reasonable hourly rate of $400," taking into consideration Mr. Faillace's prior suspension); *Tambriz v. Taste and Sabor LLC*, 577 F. Supp. 3d 314, 333 (S.D.N.Y. 2021) (reducing Mr. Faillace's rate to $300.00 per hour due to $450.00 being "on the high end" and Mr. Faillace's work being "sloppy, incomplete, and internally contradictory"); *Crismeli Deli Grocery*, 2024 WL 3730115, at *10 (denying Mr. Faillace an award of attorney's fees due to the nature of his suspension and his firm's failure "to serve the [p]roposed [f]indings on the defaulted defendants").

This default matter is not complex. Mr. Faillace made several errors, including typographical errors in party names and filing errors in the three proposed certificates of default and his supporting declaration. As a result, Mr. Faillace had to request leave to amend the complaint to correct the spelling of a party's name; he also had to re-file the three proposed certificates and his declaration in support of default. (*See* ECF 14, Mot. for Leave; ECF 19, Not. to Att'y.)

Following recent decisions in this District, and considering the lack of complexity in this case and the several errors Mr. Faillace made in filings, I respectfully recommend that a reasonable hourly rate for Mr. Faillace would be $400.00.

This Court has found the rate of $125.00 per hour for paralegals to be reasonable. *See Morisseau v. Glob. A Brands, Inc.*, No. 23-CV-5679 (JAV) (SDA), 2025 WL 2109378, at *5 (S.D.N.Y. July 3, 2025), *report and recommendation adopted*, 2025 WL 2105806 (S.D.N.Y. July 28, 2025); *Jesus v. Gotham Cleaners Inc.*, No. 23-CV-4783 (PAE) (SLC), 2024 WL 4264906, at *13 (S.D.N.Y. Aug. 1, 2024), *report and recommendation adopted*, 2024 WL 4891890, at *5 (S.D.N.Y. Nov. 26, 2024). The hourly rate of $125.00 for PL and EM is reasonable.

*b. Reasonable Hours Expended*

In determining the reasonable number of hours worked, "[t]he Court should examine contemporaneous time records that identify, for each attorney, the hours expended on a task, with a view to the value of the work product of the specific expenditures to the client's case." *Angamarca v. Pita Grill 7 Inc.*, No. 11-CV-7777 (JGK) (JLC), 2012 WL 3578781, at *12 (S.D.N.Y. Aug. 2, 2012) (quoting *Luciano v. Olsten Corp.*, 109 F.3d 111, 116 (2d Cir. 1997)). Plaintiff included an invoice with the hours billed by the attorney and paralegals, which shows they spent a total of 13.9 hours in connection with this action. (*See* ECF 32-6, Billing Chart.)

The 13.9 hours billed is comparable to time approved as reasonable by courts in this Circuit for work on a default judgment in an NYLL and FLSA action. *See Burns*, 635 F. Supp. 3d at 285 (S.D.N.Y. 2022) (finding 13 hours reasonable for a FLSA/NYLL default judgment); *Newman v. ASA Coll., Inc.*, 754 F. Supp. 3d 521, 547 (S.D.N.Y. 2024) (finding 13.1 hours reasonable in the same circumstances); *Leon v. Chen*, No. 16-CV-0480, 2017 WL 1184149, at *10 (E.D.N.Y. Mar.

29, 2017) (finding 13.51 hours reasonable in the same circumstances). Thus, I respectfully recommend that the Court approve as reasonable the 13.9 hours spent by Plaintiff's counsel.

When the reduced hourly rate of $400.00 for Mr. Faillace and hourly rate of $125.00 for the two paralegals are multiplied by the reasonable hours expended by each of them, the resulting attorney's fees are $4,625.00.[9] Thus, I respectfully recommend that Plaintiff be awarded $630.00 in reasonable costs and $4,625.00 in attorney's fees, for a total of $5,255.00.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that the motion for a default judgment should be GRANTED and that judgment should be entered against Defendants in favor of Plaintiff, with Plaintiff to be awarded:

1. Damages in the amount of $113,281.61, consisting of: (a) $3,790.00 in total unpaid minimum wages; (b) $43,473.00 in total unpaid overtime wages; (c) $4,116.00 in total unpaid spread of hours wages; (d) $51,379.00 in liquidated damages (a+b+c); and (e) $10,523.61 in prejudgment interest, plus $12.67 per day for every day after August 24, 2026 until the Clerk of Court enters a final judgment;
2. Reasonable attorney's fees and costs in the amount of $5,255.00; and

[9] Mr. Faillace billed 10.5 hours at an hourly rate of $400.00, which totals $4,200.00. Paralegals PL and EM together billed 3.4 hours at an hourly rate of $125.00, which totals $425.00. The grand total is $4,625.00.

3. Post-judgment interest pursuant to 28 U.S.C. § 1961.

DATED: August 24, 2026
New York, NY

**RESPECTFULLY SUBMITTED,**

**ROBYN F. TARNOFSKY**
**United States Magistrate Judge**

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO REPORT AND RECOMMENDATION**

The parties shall have fourteen days (including weekends and holidays) from service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. Plaintiff shall promptly serve a copy of this report and recommendation on each Defaulting Defendant by mail and email at Defendants' last known addresses and shall file proof of such service on the docket on the day such service is made. A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Koeltl.

THE FAILURE TO OBJECT WITHIN FOURTEEN DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Thomas v. Arn,* 474 U.S. 140, 145 (1985).